Reena A. Gambhir (*pro hac* pending)
Brittany L. Nyovanie (*pro hac* pending)
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006
Tel:   (202) 540-7200
Fax:   (202) 540-7201
E-mail: rgambhir@hausfeld.com
E-mail: bnieves@hausfeld.com

Samuel Maida (Cal. Bar. No. 333835)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
E-mail: smaida@hausfeld.com

*Counsel for Petitioner*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| In re *Ex Parte* Application of<br><br>CONSUMERS' ASSOCIATION<br><br>Petitioner for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding | **Case No: 5:23-mc-80322**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER GRANTING LEAVE TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782** |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 2

III. DISCOVERY SOUGHT ...................................................................................................... 3

    A. Documents From the FTC Proceedings and U.S. Class Action ................................ 3

    B. Apple and Samsung's Internal Evidence .................................................................. 6

    C. Comparator Agreements ............................................................................................ 6

IV. LEGAL STANDARD .......................................................................................................... 7

V. ARGUMENT ........................................................................................................................ 8

    1. Apple and Samsung are Not Participants in the Foreign Proceeding. ........................ 9

    2. The Tribunal Is Receptive to Proof-Gathering Assistance. ........................................ 9

    3. Which? Is Not Circumventing Foreign Proof-Gathering Restrictions. ..................... 10

    4. Which?'s Discovery Requests Are Narrowly Tailored to Avoid Undue Burden. ...... 11

VI. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Ex Parte Apple Inc.*,
  No. MISC 12-80013 JW, 2012 WL 1570043 (N.D. Cal. May 2, 2012) .................................... 11

*Apple, Inc. v. Samsung Elecs, Co.*,
  67 F. Supp. 3d 1100 (N.D. Cal. 2014) ...................................................................................... 8

*In re Ex Parte Application of Pro-Sys Consultants*,
  No. 16-mc-80117-DMR, 2016 WL 3405547 (N.D. Cal. June 21, 2016) .................................. 12

*In re Ex Parte Application of Qualcomm Inc.*,
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) ..................................................................................... 8

*In re Ex Parte Application of TPK Touch Sols. (Xiamen) Inc.*,
  No. 16-mc-80193-DMR, 2016 WL 6804600 (N.D. Cal. Nov. 17, 2016) .................................. 8

*Brodsky v. Apple Inc.*,
  No. 19-cv-00712-LHK, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ..................................... 3

*FTC v. Qualcomm Inc.*,
  411 F. Supp. 3d 658 (N.D. Cal. 2019), *rev'd and vacated*, 969 F.3d 974 (9th Cir. 2020) ...... 3, 7

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) .................................................................................................. 3, 4

*FTC v. Qualcomm, Inc.*,
  No. 5:17-cv-00220 (N.D. Cal.) ........................................................................................ *passim*

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
  633 F.3d 591 (7th Cir. 2011) ................................................................................................... 11

*Intel Corp. v. Advanced Micro Devices*,
  542 U.S. 241 (2004) ......................................................................................................... *passim*

*In re Ex Parte LG Elecs. Deutschland GmbH*,
  No. 12-cv-1197-LAB (MDD), 2012 WL 1836283 (S.D. Cal. May 21, 2012) ........................... 7

*In re Mesa Power Grp., LLC*,
  No. CIV.A. 2:11-mc-280-ES, 2012 WL 6060941 (D.N.J. Nov. 20, 2012) ............................... 12

*In Re: Qualcomm Antitrust Litigation*,
  No. 5:17-md-02773-LHK (N.D. Cal) ........................................................................................ 1

*In re Qualcomm Inc.*,
   No. 18-mc-80104-VKD, 2018 WL 3845882 (N.D. Cal. Aug. 13, 2018) .................................. 10

*In re Republic of Equador*,
   No. C–10–80225 MISC CRB (EMC), 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010)......... 7, 12

*Super Vitaminas, S.A.*,
   No. 17-mc-80125-SVK, 2017 WL 5571037 (N.D. Cal. Nov. 20, 2017) ..................................... 8

**STATUTES**

28 U.S.C. § 1782 ...................................................................................................................*passim*

28 U.S.C. § 1782(a).......................................................................................................... 2, 7, 9

Competition Act 1998 section 47B ................................................................................................ 2

**OTHER AUTHORITIES**

*In re: Qualcomm Antitrust Litig.*,
   3:17-md-02773-JSC (N.D. Cal. Nov. 2, 2023), ECF No. 1011 ..................................................... 4

*In re: Qualcomm Antitrust Litig.*,
   No. 17-MD-02773-LHK (N.D. Cal. Sept. 27, 2018), ECF No. 760 ............................................ 4

*Consumers' Ass'n v. Qualcomm, Inc.*,
   No. 1382/7/7/21 (July 24, 2023) ........................................................................................*passim*

MEM. ISO APPL. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
3

Consumers' Association (hereafter referred to as "Which?"), a registered charity and company with over 60 years of experience championing consumer rights in the United Kingdom, respectfully applies to the Court for an order pursuant to 28 U.S.C. § 1782 granting Which? leave to obtain targeted discovery from Samsung Semiconductor, Inc. and/or Samsung Electronics America, Inc. (the "Samsung Entities") and Apple Inc. ("Apple") for use in a foreign class action litigation pending in the Competition Appeal Tribunal of the United Kingdom (the "Tribunal"), *Consumers' Association v. Qualcomm, Inc.*, Case No. 1382/7/7/21 (the "U.K. Class Action"). This application is supported by the memorandum of points and authorities below, the Declaration of Brittany L. Nyovanie ("Nyovanie Decl."), and the Declaration of Nicola Anne Boyle ("Boyle Decl."). The subpoenas to be served on the Samsung Entities and Apple are attached to the Application.

**I.   INTRODUCTION**

This Application arises from Which?'s allegations in the U.K. Class Action that Qualcomm, Inc. ("Qualcomm"), a global telecommunications company, breached U.K. and E.U. competition laws by leveraging its dominant position in the market for baseband processor chipsets to extract higher royalty payments for its standard essential patents ("SEPs") from smartphone manufacturers, such as Apple and Samsung. Which? alleges that this anticompetitive conduct resulted in consumers purchasing smartphones during the relevant period that were more expensive and/or lower quality.

Pursuant to 28 U.S.C. § 1782, Which? seeks discovery from Samsung and Apple for the U.K. Class Action, including, *inter alia*, documents pertaining to: (1) *FTC v. Qualcomm, Inc.*, No. 5:17-cv-00220 (N.D. Cal.) (the "FTC Proceedings"); (2) *In Re: Qualcomm Antitrust Litigation*, No. 5:17-md-02773-LHK (N.D. Cal) (the "U.S. Class Action"); (3) agreements between Apple/Samsung and licensors other than Qualcomm; and (4) Apple/Samsung internal perspectives on their reliance on Qualcomm. The requested documents are directly relevant to Which?'s claims but are currently in Samsung and Apple's possession and cannot be obtained in the U.K. Class Action due to jurisdictional limitations, as well as protective orders.

Which?'s application clearly satisfies Section 1782's statutory requirements. Firstly, this Court is in "the district in which [the] person resides," pursuant to 28 U.S.C. § 1782(a), as both

Samsung and Apple have offices in the Northern District of California and have developed, designed, manufactured, marketed, distributed, offered to sell, and/or sold products and services in the District. Secondly, Which? is seeking discovery "for use in a proceeding in a foreign . . . tribunal." *Id*. And thirdly, Which? qualifies as an "interested person" in the foreign proceeding as it is a named party in the U.K. Class Action, acting as the class representative.

The *Intel* factors additionally support Which?'s request with respect to both parties: (1) neither Samsung nor Apple are parties to the foreign proceeding or domiciled within the U.K., and accordingly, the requested material is not otherwise obtainable from either; (2) there is clear evidence that the Tribunal is receptive to U.S. federal-court jurisdictional assistance, and it has noted that Which? should not delay in making any "applications in other jurisdictions";[1] (3) the respective requests do not conceal any attempt to circumvent foreign proof-gathering restrictions; and (4) all of Which?'s discovery requests are narrowly tailored. *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 264-65 (2004).

Accordingly, Which? respectfully requests that the Court enter the proposed order, allowing Which? to serve Samsung and Apple, with the subpoenas attached to the Application.

## II.  BACKGROUND

Which? is a registered charity in the U.K. that advances education and understanding on consumer issues, protects and promotes the safety of consumers, promotes compliance with consumer laws, and takes legal action for the benefit or protection of the rights of consumers.[2]

In February 2021, Which? filed an application to commence collective proceedings pursuant to section 47B of the Competition Act 1998 (the "Act") against Qualcomm, alleging that Qualcomm had contravened U.K. and E.U. competition laws.[3] Which? alleges that during the relevant period, Qualcomm abused positions of dominance on related markets by applying exploitative and exclusionary commercial practices that caused widespread harm to U.K. consumers. More

---

[1] *See* Nyovanie Decl., Ex. 1, Transcript, *Consumers' Ass'n v. Qualcomm, Inc*., Case No. 1382/7/7/21 at 119:1-5 (July 5, 2023).
[2] Boyle Decl., at ¶ 3.
[3] *See* Nyovanie Decl., Ex. 3, Notice of an Application to Commence Collective Proceedings Under Section 47B of the Competition Act 1998, Competition Appeal Tribunal (Case No. 1382/7/7/21).

specifically, Which? alleges that Qualcomm abused its dominance in the market for the supply of baseband processor chipsets and the market for the licensing of associated SEPs by: (1) refusing to supply LTE chipsets to manufacturers unless they agreed to take (and pay for) a free-standing license to use Qualcomm's portfolio of patents, known as "no license, no chips" (the "NLNC Policy") and (2) refusing to license its SEPs to competing chipset manufacturers on an exhaustive basis (the "RTL Policy"). Which? argues that the NLNC and RTL Policies have inflated the royalties paid by smartphone manufacturers for the use of Qualcomm's patents, meaning that smartphone manufacturers pay higher all-in prices for their chipset requirements than would be the case absent Qualcomm's abusive conduct.

By employing these hurdles for smartphone manufacturers and charging inflated fees, Qualcomm's actions have resulted in increased prices and/or lower quality smartphones for consumers who purchased LTE-enabled Apple and Samsung smartphones, dating back to October 1, 2015. Which?'s lawsuit is brought on behalf of all such consumers—estimated as a total class of approximately 29 million consumers who purchased LTE-enabled Apple and/or Samsung smartphones in the relevant period with an estimated loss suffered of approximately £482.5 million, including simple interest. The U.K. Class Action was certified by judgment of the Tribunal in May 2022. Qualcomm did not appeal.

### III.     DISCOVERY SOUGHT

#### A.  Documents From the FTC Proceedings and U.S. Class Action

The FTC Proceedings, initiated in January 2017, concern *substantially* similar allegations that Qualcomm abused its dominance by engaging in the NLNC and RTL Policies. In a May 2019 judgment, the Court ultimately concluded in the FTC Proceedings that the NLNC and RTL Policies infringed U.S. antitrust laws by enabling Qualcomm to charge unreasonably high LTE SEP royalty rates to its OEM customers and stifle competition in the market for the supply of certain chipsets. *See FTC v. Qualcomm Inc.*, 411 F. Supp. 3d 658 (N.D. Cal. 2019), *rev'd and vacated*, 969 F.3d 974 (9th Cir. 2020). The Court's order describes the facts, scope and effects of the NLNC and RTL Policies in detail, relying on, among other things, documents and testimony given by Apple and

Samsung.[4]

Likewise, in the U.S. Class Action, the Court certified a class action brought on behalf of all natural persons and entities in the U.S. who have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of a Universal Mobile Telecommunications System ("UMTS"), Code-Division Multiple Access ("CDMA"), and/or LTE-compatible mobile device for their own use and not for resale. *See* Order Granting Plaintiffs' Motion for Class Certification at 66, *In re: Qualcomm Antitrust Litig.*, No. 17-MD-02773-LHK (N.D. Cal. Sept. 27, 2018), ECF No. 760. Like Which?, the class representatives alleged that, *inter alia*, the NLNC and RTL Policies enable Qualcomm to extract supra-competitive royalties for its SEPs and raise the all-in prices paid for Qualcomm's and rivals' chipsets.[5]

The allegations in the FTC Proceedings and the U.S. Class Action—namely that Qualcomm abused its dominance by engaging in the NLNC and RTL Policies, leading to inflated royalties for LTE SEPs—are the same allegations being advanced by Which? in the U.K. Class Action. Accordingly, in January and July 2023, the Tribunal ordered Qualcomm to disclose, among other documents, both publicly and non-publicly available exhibits, depositions, and expert reports from the FTC Proceedings and U.S. Class Action.[6] However, Qualcomm asserts that it is unable to disclose documents containing third party confidential information as produced in the FTC Proceedings due to protective orders, and is thus unable to disclose documents that contain Apple and/or Samsung's confidential information. Likewise, for documents in the U.S. Class Action, Qualcomm informed Which? that there was a coordination order in place between the U.S. Class Action and the FTC Proceedings, such that most of the further collections and productions that were made in the U.S. Class Action were re-produced in the FTC Litigation. Qualcomm maintains that it

---

[4] The Court's decision was reversed in August 2020 on points of U.S. law. *See FTC v. Qualcomm Inc.*, 969 F.3d 974 (9th Cir. 2020).

[5] The Court has since granted a motion by Qualcomm for summary judgment, but the Plaintiffs are seeking permission to appeal. *See* Notice of Appeal, *In re: Qualcomm Antitrust Litig.*, 3:17-md-02773-JSC (N.D. Cal. Nov. 2, 2023), ECF No. 1011.

[6] Nyovanie Decl., Ex. 2, Order of the Chair, *Consumers' Ass'n v. Qualcomm, Inc.*, No. 1382/7/7/21 (July 24, 2023).

"considers that the easiest and most appropriate way for [Which?] to obtain the third party Confidential Material which it seeks from the FTC proceedings is for it to file an application at the US District Court under 28 U.S.C. §1782."[7]

Any documents filed by Apple and Samsung in the FTC Proceedings and the U.S. Class Action that evidence Qualcomm's conduct, and the impact that this conduct had on Apple and Samsung, are directly and highly relevant to Which?'s claim. Pursuant to Qualcomm's own direction, Which? seeks the requested documents from Apple and Samsung directly. In its document requests, Which? has provided specificity where possible (*e.g.*, listing deponents that were referenced in the FTC Proceedings), but has also included requests intended to capture any relevant documents that Which? has not been able to identify from publicly available information and that are likely to have been produced by Samsung and Apple for the purposes of the FTC Proceedings and/or U.S. Class Action.

From the FTC Proceedings, Which? therefore seeks (1) unredacted depositions given by witnesses for Samsung at trial, but which were sealed or subject to redactions; (2) unredacted versions of documents provided by Apple and Samsung that were selected by Qualcomm or the FTC (or jointly) as trial exhibits; and (3) to the extent they exist, unredacted copies of any other depositions, submissions, briefs, witness statements or expert reports provided by Apple or Samsung which relate to substantive issues. From the U.S. Class Action, Which? seeks (1) documents produced by Apple and Samsung which were considered by the Plaintiffs' expert, Dr. Michael Lasinski ("Lasinski"), in relation to his expert report, dated October 26, 2018, regarding what the appropriate FRAND royalty rate for Qualcomm's cellular SEPs should have been absent the anticompetitive conduct and the magnitude of any overcharge that Qualcomm may have historically levied on device purchases; (2) an exhibit referred to in the Class Certification Judgment as Apple's internal documents showing that Apple considered Qualcomm's royalty when pricing and designing iPhones to be sold in 2017; and (3) any other depositions, submissions, briefs, witness statements

---

[7] *See* Boyle Decl., at ¶ 22.

and expert reports provided by Apple or Samsung which relate to substantive issues.

### B. Apple and Samsung's Internal Evidence

The disclosure ordered by the Tribunal in its July 2023 hearing includes documents disclosed in the FTC Proceedings relating to negotiations between Qualcomm and Apple and Samsung in relation to the grant of cellular SEP licenses and/or the making of component supply agreements. However, as the cut-off date for discovery in the FTC Proceedings was March 30, 2018, the disclosure ordered does not extend to documents created after that time. As Qualcomm has entered into license agreements with Apple and Samsung after March 30, 2018, Which? therefore seeks internal documents from Apple and Samsung that relate to their dependence on Qualcomm for chipsets at the time Samsung's June 30, 2022 license and Apple's April 16, 2019 license were under consideration and negotiated. This material will enable Which? to understand the impact Qualcomm's actions had on Apple and Samsung's decision-making in relation to license agreements entered into after March 30, 2018.

### C. Comparator Agreements

SEP license agreements for LTE technology that relate to subscriber units (or end-user devices) between Apple/Samsung and SEP-holders other than Qualcomm (but with SEP portfolios comparable to Qualcomm) are relevant to the way in which Which?'s experts will assess the counterfactual royalties in the U.K. Class Action.[8] Pursuant to the Tribunal's July 2023 order, Which? has (or will have) information on actual royalties paid by Apple/Samsung to Qualcomm for its LTE SEPs. However, Which?'s experts anticipate that Apple and Samsung's SEP licensing agreements for subscriber units that relate to LTE technology with Telefonaktiebolaget LM Ericsson ("Ericsson"), Nokia Corp. ("Nokia"), and InterDigital would best be used in a comparator analysis with the licensing agreements between Apple/Samsung and Qualcomm. The Court's Order in the FTC Proceedings referred to strong evidence from internal contemporaneous documents that Qualcomm itself considered that its SEP portfolio was comparable to those of Nokia and Ericsson,

---

[8] Which? has filed reports and other documents prepared by its experts which explain how such documents will be used in their analysis.

MEM. ISO APPL. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
6

and to expert analysis showing that Qualcomm's royalty rates were disproportionately high compared with the rates charged by those licensors. *See FTC*, 411 F. Supp. 3d at 788. Accordingly, Which? seeks these agreements in its requests.[9]

Which? also seeks certain documents which provide detail on the rationale for or assumptions underlying the level of the royalties payable pursuant to the agreements mentioned above, in order for Which?'s experts to be able to account for material differences in the characteristics of the agreements.

## IV.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1782, a district court may order a person residing or found within its district to produce documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. 28 U.S.C. § 1782(a); *Intel Corp.*, *see* 542 U.S. at 249, 260. The statute requires that: (1) the discovery sought is from a person residing in the district court to which the application is made; (2) the discovery is "for use" in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." *See In re Republic of Equador*, No. C–10–80225 MISC CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010).

Over time, Congress has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings." *Intel Corp.*, 542 U.S. at 247-49; *see In re Ex Parte LG Elecs. Deutschland GmbH*, No. 12-cv-1197-LAB (MDD), 2012 WL 1836283, at *3 (S.D. Cal. May 21, 2012) (noting that "[because] our courts favor broad discovery generally, the Court will authorize the issuance of the requested subpoena [under § 1782]"). In addition to the statutory requirements, courts also consider several non-statutory, non-exhaustive factors in determining whether to grant a Section 1782 application—the *Intel* factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is an

---

[9] Which? has identified the existence of the relevant agreements by reference to materials which are in the public domain, on the basis of which it has endeavoured to specify the dates of those agreements as accurately as possible. Insofar as any of those dates may be inaccurate, Which? seeks disclosure of agreements corresponding to the substance of the description provided.

MEM. ISO APPL. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
7

"attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requested is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

### V. ARGUMENT

Which?'s application satisfies each of the statutory requirements, as well as the discretionary *Intel* factors.

**A. Which? Meets Section 1782's Statutory Requirements**

Which?'s request for discovery meets all three statutory requirements under Section 1782. *See* 28 U.S.C. § 1782.

*First*, the "person[s]" from whom discovery is sought—Samsung and Apple—"reside[ ] or [are] found" in this District. For the purposes of a § 1782 petition, the Northern District of California has generally held that a corporation is 'found' in any district in which it maintains an office. *See Super Vitaminas, S.A.*, No. 17-mc-80125-SVK, 2017 WL 5571037, at *2 & n.1 (N.D. Cal. Nov. 20, 2017) (concluding that a corporate entity was found in the district because it "operate[d two] corporate sales offices" therein); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016) (concluding that corporate entities were found in the district because they maintained "in-district offices"); *In re Ex Parte Application of TPK Touch Sols. (Xiamen) Inc.*, No. 16-mc-80193-DMR, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016).

Apple is headquartered in Cupertino, California and has availed itself of (and been brought into) the Northern District on numerous occasions. *See Brodsky v. Apple Inc.*, No. 19-cv-00712-LHK, 2019 WL 4141936, at *1 (N.D. Cal. Aug. 30, 2019); *Apple, Inc. v. Samsung Elecs, Co.*, 67 F. Supp. 3d 1100 (N.D. Cal. 2014). Apple clearly resides in the District for Section 1782 purposes. Samsung is headquartered in South Korea, with several key entities domiciled in the U.S.—particularly, Samsung Semiconductor Inc. ("SSI") (based in California) and Samsung Electronics America Inc. ("SEA") (based in New Jersey). In the Northern District of California in particular, the Samsung Entities have conducted systematic and continuous local activities, including availing themselves of this Court's jurisdiction in a number of lawsuits, with several entities registered and authorized to do business in California. *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d at 1036 (noting that Samsung Research America, Inc. is headquartered in the District). This Court has itself held that Samsung's contacts in the Northern District of California are sufficient for Section 1782 purposes, explaining that "[t]he combination of the Samsung Entities' deliberate

MEM. ISO APPL. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

8

choice of this forum for its litigation with the relatedness of that litigation to the Section 1782 application, SEA and [Samsung Telecommunications America] registration to do business in California and the presence of a Samsung subsidiary in this district makes it clear that the Samsung Entities engage in systematic and continuous activities in this district." *Id*. at 1037-38.

*Second*, the discovery Which? seeks is for use in a "proceeding [before] a foreign . . . tribunal," the Competition Appeal Tribunal of the United Kingdom. 28 U.S.C. § 1782(a). And *third*, as a named party in the foreign action, Which? qualifies as an "interested" party pursuant to Section 1782. *Id*.; *see Intel*, 542 U.S. at 256 (alteration in original) (noting that there is "[n]o doubt litigants are included among . . . the 'interested person[s]' who may invoke § 1782").

Accordingly, Which? patently satisfies all Section 1782's statutory requirements.

## B. The *Intel* Factors Favor Granting Which?'s Application

### 1. Apple and Samsung are Not Participants in the Foreign Proceeding.

The first *Intel* factor favors discovery where the responding party is "not a participant" in the foreign proceeding. *Intel*, 542 U.S. at 264. Specifically, the Supreme Court has noted that,

> when the person from whom discovery is sought is a participant in the foreign proceeding . . ., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. . . . In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Id*.

Here, both Apple and Samsung are not parties to the foreign proceeding, and accordingly, the Tribunal does not have the authority to order the parties to produce the evidence sought. The "need for § 1782(a) aid" is "apparent." *Id*.

### 2. The Tribunal Is Receptive to Proof-Gathering Assistance.

The second *Intel* factor similarly weighs in Which?'s favor, focusing on the receptivity of the foreign court to the evidence sought. Courts deny Section 1782 applications based on this *Intel* factor "where the foreign tribunal or government expressly says it does not want the U.S. federal

court's assistance." *In re Qualcomm Inc.*, No. 18-mc-80104-VKD, 2018 WL 3845882, at *3-*4 (N.D. Cal. Aug. 13, 2018).

In contrast, here, there is clear evidence the Tribunal is receptive to U.S. federal-court jurisdictional assistance, and has gone so far as to indicate that the parties should proceed to make any such application without delay (it noted during the July 5, 2023 Case Management Conference that it "will not be very sympathetic to suggestions that that timetable should be delayed because of the class representative's failure to get on with its applications in other jurisdictions.").[10] The Tribunal is aware that Which? is considering, and will likely apply for, third-party material due to the relevance of such material to various aspects of its claims, including further evidence of Qualcomm's anticompetitive behavior, the impact this behavior had on Apple and Samsung (and other smartphone manufacturers), and the resulting impact this had on consumers. Although the Tribunal lacks the mechanism to, and is thus itself unable to, facilitate the sought discovery as Apple and Samsung are outside the U.K.'s jurisdiction, "nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." *Intel*, 542 U.S. at 260. "A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts." *Id*. at 261. "When the foreign tribunal would readily accept relevant information discovered in the United States, application of a foreign-discoverability rule would be senseless." *Id*. at 262.

Accordingly, with no reason to believe the Tribunal would be unreceptive to judicial assistance, and indeed, the Tribunal indicating receptivity to such discovery at the July 2023 conference, Which?'s request satisfies the second *Intel* factor.

### 3. Which? Is Not Circumventing Foreign Proof-Gathering Restrictions.

The third *Intel* factor permits the Court to consider whether an applicant is seeking aid in bad faith, to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id*. at 265. This factor supports discovery in the absence of an actual proof-

---

[10] *See* Nyovanie Decl., Ex. 1 at 119:1-5.

gathering restriction.

Here, no order of the Tribunal has prohibited Which? from pursuing the requested discovery nor is Which? aware of any restrictions or policies imposed by the Tribunal that would prohibit the proof-gathering sought here. Rather, the Tribunal is solely unable to facilitate the requested discovery because it lacks the mechanism to do so given jurisdictional limitations. However, Section 1782 does not require that the documents sought be discoverable in the foreign courts. *Id.* at 260-63. Without compelling evidence that the Tribunal would reject the discovery Which? now seeks, this factor weighs again in Which?'s favor. *See*, *e.g.*, *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (noting that "[o]nce a section 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives").

### 4. Which?'s Discovery Requests Are Narrowly Tailored to Avoid Undue Burden.

The final *Intel* factor again favors Which?'s application as the discovery sought is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Which?'s document requests represent targeted efforts to gain evidence directly relevant to the areas at issue in the U.K. Class Action and are easily obtainable given that most requests are for documents already produced in related and/or overlapping litigations in the U.S. Both Samsung and Apple are likely to have "off-the-shelf" access to many of the relevant documents. Moreover, the documents sought are believed to be contained largely, if not entirely, in electronic databases—further lessening any potential burden. *See*, *e.g.*, *In re Ex Parte Apple Inc.*, No. MISC 12-80013 JW, 2012 WL 1570043, at *3 (N.D. Cal. May 2, 2012) (concluding request for Nokia to "search any centralized physical or electronic repositories whose principal purposes include the retention of . . . correspondence [related to Motorola/Nokia licenses]" was not unduly burdensome).

Which? is willing to protect the confidentiality of any sensitive documents produced, including via a protective order, and will cooperate with both Apple and Samsung to ensure the confidentiality of the documents is maintained in the U.K. Class Action. In this regard, there is a

sophisticated two-tiered confidentiality ring established in the U.K. Class Action that was set-up to ensure the protection of certain disclosure provided by Qualcomm in relation to third party material from the file of the European Commission. The confidentiality ring was revised in March 2023 to introduce an "inner ring" following discussions between Which?, Qualcomm and Apple.[11] Accordingly, Which?'s application and subpoenas place minimal burden on Apple and Samsung, and the final *Intel* factor should be deemed in Which?'s favor.

### C. The Court May Grant the Application *Ex Parte*

This Court may grant the application and permit service of the proposed subpoenas without hearing from Apple and the Samsung Entities as "[a]pplications pursuant to 28 U.S.C. § 1782 are frequently granted *ex parte* where the application is for the issuance of subpoenas and the substantial rights of the subpoenaed person are not implicated by the application." *In re Mesa Power Grp., LLC*, No. CIV.A. 2:11-mc-280-ES, 2012 WL 6060941, at *4 (D.N.J. Nov. 20, 2012). The basis for permitting *ex parte* applications in the Ninth Circuit is that the respondents "can . . . raise[ ] objections and exercise[ ] their due process rights by motions to quash the subpoenas." *In re Ex Parte Application of Pro-Sys Consultants*, No. 16-mc-80117-DMR, 2016 WL 3405547, at *3 (N.D. Cal. June 21, 2016) (internal quotation marks and citations omitted) (alterations in original)); *see In re Republic of Equador*, 2010 WL 3702427 at *2, *5 (same). Accordingly, the Court should grant this application *ex parte*.

### VI. CONCLUSION

Which? easily satisfies Section 1782's statutory requirements. The *Intel* factors, in their entirety, only further support the Court exercising its discretion to grant Which?'s application.

Which? respectfully requests that this Court issue the proposed order authorizing Which? to serve Apple and Samsung with subpoenas in substantially the same form as those attached to the Application.

---

[11] Boyle Decl., at ¶ 33.

MEM. ISO APPL. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
12

| | |
|---|---|
| Dated: December 7, 2023 | Respectfully submitted, |
| | *s/ Samuel Maida* |
| | Samuel Maida |
| | |
| | ***Counsel for Petitioner*** |
| | |
| | Samuel Maida (Cal. Bar. No. 333835) |
| | HAUSFELD LLP |
| | 600 Montgomery Street, Suite 3200 |
| | San Francisco, CA 94111 |
| | Tel: (415) 633-1908 |
| | Fax: (415) 358-4980 |
| | E-mail: smaida@hausfeld.com |
| | |
| | Reena A. Gambhir (*pro hac* pending) |
| | Brittany L. Nyovanie (*pro hac* pending) |
| | HAUSFELD LLP |
| | 888 16th Street NW, Suite 300 |
| | Washington, DC 20006 |
| | Tel:    (202) 540-7200 |
| | Fax:    (202) 540-7201 |
| | E-mail: rgambhir@hausfeld.com |
| | E-mail: bnieves@hausfeld.com |